# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY DECOURSEY, | Case No. CV 10-0628 JCG |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.
## INTRODUCTION AND SUMMARY

On February 8, 2010, plaintiff Kimberly Decoursey ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of supplemental security income benefits ("SSI"). [Docket No. 4.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 12.] Both Plaintiff and Defendant subsequently consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 13, 14.]

On August 11, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 19, 20.]

Pursuant to a February 11, 2010 case management order, the parties submitted a detailed, 26-page joint stipulation for decision on October 15, 2010. [Docket No. 22.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, the Administrative Law Judge ("ALJ") failed to fully and fairly develop the record under the circumstances presented here. As the Ninth Circuit teaches, the ALJ has a special duty to ensure that the claimant's interests are considered, particularly where the claimant may be mentally ill. The Court thus remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 27 years old on the date of her administrative hearing, has a ninth grade education. (*See* Administrative Record ("AR") at 26, 90.) Plaintiff has no past relevant work. (*Id.* at 21, 28.)

On October 31, 2007, Plaintiff protectively filed for SSI, alleging that she has been disabled since February 1, 2007 due to human immunodeficiency virus ("HIV"). (*See* AR at 11, 45, 63, 86.) Plaintiff's application, which was designated as a "prototype" case,[1] was denied on February 22, 2008, after which she filed a timely request for a hearing. (*Id.* at 44, 45-49, 54.)

On July 14, 2009, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (*See* AR at 23, 25-39, 42.) Jane Hale, a vocational expert ("VE"), also testified. (*See id.* at 39-41.)

---

[1] A "prototype case" designates a single decision maker to make the initial determination and eliminates the reconsideration step in the administrative review process. 20 C.F.R. §§ 404.906(a) & 416.1406(a).

On September 2, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 11-22.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her SSI application date. (*Id.* at 13.)

At step two, the ALJ found that Plaintiff suffers from a combination of severe and non-severe medically determinable impairments consisting of "HIV-positive status, a solid nodule of the right breast with benign findings, a right ovarian cyst, status post treatment for syphilis, and a history of cocaine dependence, in remission." (AR at 13 (citations and emphasis omitted).) The ALJ found that Plaintiff did not suffer from any severe mental impairments. (*Id.* at 14.)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment or combination of impairments meets or medically equals the severity of any listing set forth in the Social Security regulations.[2] (AR at 17.)

The ALJ then assessed Plaintiff's residual functional capacity[3] ("RFC") and determined that she can perform light work. (AR at 17.) Specifically, the ALJ found that Plaintiff can "occasionally lift 20 pounds and frequently lift 10 pounds[ and] can stand and/or walk for six hours in an eight-hour day, and can sit for six hours in an eight-hour day." (*Id.* at 17-18 (emphasis omitted).) The ALJ further found Plaintiff was limited to occasional postural activities. (*Id.* at 18.)

The ALJ found, at step four, that Plaintiff has no past relevant work. (AR at 21).

---

[2] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including parking lot attendant, ticket taker, and basket filler. (AR at 21 (emphasis omitted).) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 11, 22.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 4.) The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d

at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Three disputed issues are presented for decision here:

1. whether the ALJ properly developed the record, (Joint Stip. at 3-7);

2. whether the ALJ properly assessed Plaintiff's credibility, (*id.* at 13-16, 22); and

3. whether the ALJ posed a complete hypothetical question to the vocational expert. (*Id.* at 22-24.)

Under the circumstances here, the Court finds the issue of the ALJ's failure to fully and fairly develop the record to be dispositive of this matter, and does not reach the remaining issues.

## V.
## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ failed to "develop the record regarding the opinion of [treating psychotherapist Martin H. Olivares, Ph.D. ("Dr. Olivares")]." (Joint Stip. at 3.) Plaintiff contends that "[i]n the present matter, the ALJ expressly stated that there was insufficient record evidence to support Dr. Olivares opinion." (*Id.* at 5.) Plaintiff maintains that the ALJ "failed to obtain the doctor's treatment records" despite the fact that "Dr. Olivares noted that he had provided treatment to Plaintiff on a weekly basis over the course of one year and two months." (*Id.*)

A. <u>The ALJ's Duty to Fully and Fairly Develop the Record</u>

The ALJ has an affirmative "duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003)

1  (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)) (ellipsis in original);
2  *see Tonapetyan*, 242 F.3d at 1150. "In cases of mental impairments," the ALJ's
3  duty to clarify and develop the record "is especially important." *DeLorme v.*
4  *Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991); *see also Tonapetyan,* 242 F.3d at 1150
5  ("The ALJ's duty to develop the record fully is . . . heightened where the claimant
6  may be mentally ill and thus unable to protect her own interests.").

      If the evidence is ambiguous or inadequate to permit a proper evaluation of a claimant's impairments, the ALJ has a duty to "conduct an appropriate inquiry[.]" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *accord Tonapetyan*, 242 F.3d at 1150; *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence [or] the ALJ's own finding that the record is inadequate"). The ALJ may discharge this duty in several ways, including: (1) subpoenaing the claimant's physicians; (2) submitting questions to the claimant's physicians; (3) continuing the hearing; or (4) keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150.

      B.    <u>Dr. Olivares' Opinion</u>

      On July 8, 2009, Dr. Olivares completed a Mental Residual Functional Capacity Questionnaire. (AR at 296-301.) In the questionnaire, Dr. Olivares indicated that he treats Plaintiff once a week and diagnosed her with depression and borderline character traits. (*Id.* at 296.)

      Dr. Olivares indicated that Plaintiff's medications cause her "fatigue, loss, of concentration [and] nausea." (AR at 296.) Dr. Olivares opined that Plaintiff is "not able to work in a regular job [due to] her ongoing fatigue, loss of concentration [and] need to have a regular 2 hour nap." (*Id.* at 301.)

      At the administrative hearing, the ALJ noted that, apart from the questionnaire filled out by Dr. Olivares, the record did not include treatment notes from his office. (*See* AR at 31.) Plaintiff testified that she "wasn't told that [she] had to bring any

1  treatment records or anything like that." (*Id.*)  As a result, the ALJ kept the record
2  open for 30 days following the hearing so that Plaintiff could submit additional
3  medical evidence. (*Id.* at 31-32, 42.)
4      Subsequent to the hearing, Plaintiff submitted a letter from Dr. Olivares,
5  which attempted to summarize the progress of her treatment from June 2, 2008
6  through July 27, 2009. (*See* AR at 303, 304.)  In his letter, Dr. Olivares reported that
7  he began treating Plaintiff since June 2, 2008 for "depression associated with HIV
8  disease." (*Id*. at 304.)  Dr. Olivares found that Plaintiff's "ability to learn new tasks
9  is poor; her cognition is slow, and disorganized.  She exhibits poor concentration
10 and extreme fatigue and limited ability to relate to others in situations of stress."
11 (*Id.*)  Dr. Olivares concluded his letter by providing his telephone number and
12 stating, "[i]f you wish further information, please call me." (*Id.*)

13      C.    The ALJ's Assessment of Dr. Olivares' Opinion
14      The ALJ rejected Dr. Olivares' opinion based on four reasons.
15      First, the ALJ explained that he is "not bound by his opinion because it is on
16 an issue reserved to the Commissioner[.]" (AR at 16.)
17      Second, the ALJ found that Dr. Olivares "provided no treating records to
18 support his opinion" despite the fact that the record remained open for 30 days
19 following the hearing. (*See* AR at 15, 16.)
20      Third, the ALJ found that Dr. Olivares' opinion "is inconsistent with both the
21 overall record . . . , and indeed, his own findings." (AR at 16; *see also id.* at 20.)
22 Specifically, the ALJ stated that "[f]or example, at one point, Dr. Olivares put a
23 checkmark next to 'loss of intellectual ability of 15 IQ points or more,' but checked
24 'no' in response to 'Does your patient have a low IQ or reduced intellectual
25 functioning?'" (*Id.* at 16.)  The ALJ explained that "[w]hile not necessarily a direct
26 contradiction, Dr. Olivares' pattern of checkmarks is, at the very least, difficult to
27 interpret, and accordingly, difficult to credit." (*Id.*)
28      Fourth, the ALJ found that Dr. Olivares' opinion "is undercut by several other

7

1  treating providers." (AR at 16.)

2       D.    <u>The ALJ Failed to Fully and Fairly Develop the Record</u>

3      Having carefully reviewed the record and the parties' papers, the Court is
4  persuaded that the ALJ failed to fully and fairly develop the record and his decision
5  is not supported by substantial evidence. Three reasons guide this Court's
6  determination.

7      First, the Court finds that the evidence regarding Plaintiff's mental limitations
8  was sufficiently inadequate so as to trigger the ALJ's duty to develop the record.
9  The ALJ recognized during the hearing that the medical record potentially did not
10 contain more than many months of Plaintiff's treatment records from Dr. Olivares'
11 office. (AR at 31.) In his decision, the ALJ found that Dr. Olivares' opinion was
12 "difficult to interpret." (*Id.* at 16.) While the Court acknowledges that the ALJ kept
13 the record open for an additional 30 days following the hearing, the ALJ's duty to
14 develop the record was not discharged given the ambiguity acknowledged in his
15 decision. *See also Holloman v. Astrue*, 2010 WL 3618651, at *4 (E.D. Cal. 2010)
16 ("While it is true that it is the plaintiff's burden to prove disability, plaintiff's
17 attorney's shortcomings do not excuse the ALJ from his duties.").

18     Further, subsequent to the hearing, Plaintiff submitted Dr. Olivares' letter,
19 which attempted to summarize the doctor's opinion regarding weekly treatment
20 provided Plaintiff for over a year. In the letter, Dr. Olivares informed the ALJ, "[i]f
21 you wish further information, please call me[.]" (AR at 304). Accordingly, the ALJ
22 was aware the treatment records existed and were available upon request. *See Hayes*
23 *v. Astrue*, 279 Fed.Appx. 502, 503 (9th Cir. 2008) ("[I]t was error for the ALJ to fail
24 to consider the [test] results, as they were available and could have been produced to
25 the ALJ upon request, and [the ALJ] was aware of their existence.").

26     Under the circumstances here, the ALJ should have recontacted Dr. Olivares
27 for additional treatment records given his belief that Dr. Olivares' opinion was
28 unsupported and difficult to interpret. *See* 20 C.F.R. §§ 404.1512(e)(1) &

416.912(e)(1) (if evidence from a medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available); *see* Social Security Ruling ("SSR") 96-5p,[4] 1996 WL 374183, at *6 ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.").

Second, it is apparent that the ALJ's rejection of Dr. Olivares' opinion also impacted the ALJ's credibility and RFC determination in this case. For instance, the ALJ rejected Plaintiff's subjective complaints of "fatigue, weakness, nausea, and depression" because of, among other reasons, the ALJ's assessment of the "medical evidence and overall longitudinal record[.]" (*See* AR at 18.) If the treatment records from Dr. Olivares' office reflect that Plaintiff consistently reported these symptoms, such evidence might impact the ALJ's credibility determination on this point since it would help corroborate Plaintiff's testimony and statements.

Third, contrary to Defendant's assertion, (*see* Joint Stip. at 8-13), none of the reasons provided by the ALJ for rejecting Dr. Olivares' opinion are legally sufficient and/or supported by substantial evidence. The ALJ's conclusion that he is "not bound by his opinion because it is on an issue reserved to the Commissioner[]" begs the disability determination question and is not a valid basis for rejecting a medical

---

[4] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

opinion. (AR at 16). It is axiomatic that the opinion of a treating physician is not conclusive as to the ultimate determination of disability, *i.e.*, that is the ALJ's function. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("[T]he opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability."); *accord Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). However, that a physician provides a disability determination in his or her opinion does not provide a basis upon which to reject that opinion.

With respect to the ALJ's rejection of Dr. Olivares' opinion because it is "contradicted" by "other treating providers," (AR at 16, 20), this is not a specific and legitimate reason because the other treating physicians cited by the ALJ were not mental health providers. The ALJ found that Dr. Olivares' opinion was contradicted by the opinions of "several other treating providers" who, for example, opined that Plaintiff "should be able to sustain her regular work" and found no "indications of a diagnosed mental impairment." (*See id.* at 16.) However, as the ALJ pointed out, "these physicians do not appear to specialize in mental health care." (*Id.*) Accordingly, the ALJ should not have rejected Dr. Olivares' opinion in favor of the "other treating providers" given that Dr. Olivares diagnosed Plaintiff with depression, a condition within his area of specialty. *See Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) ("SSA regulations expressly recognize the important role played by specialists in the disability determination process."); 20 C.F.R. § 416.927(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist").

## VI.
## REMAND IS APPROPRIATE

This Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989). Where no

useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, remand is required because the ALJ failed to fully and fairly develop the record. On remand, the ALJ shall obtain any available treatment records from Dr. Olivares.

Because the Court concludes that the ALJ failed to fully and fairly develop the record, it does not reach Plaintiff's remaining contentions. (*See* Joint Stip. at 13-16, 22-24.) Credibility findings are reviewed in light of the record as a whole, which in the instant case should properly include Plaintiff's mental health treatment records. *See Struck v. Astrue*, 247 Fed.Appx. 84, 86-87 (9th Cir. 2007). Accordingly, on remand, the ALJ must reconsider Plaintiff's credibility and reassess Plaintiff's RFC.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: February 28, 2011         _____

                                              Hon. Jay C. Gandhi
                                     United States Magistrate Judge